**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

v.                                                                    Case No. 8:23-cr-305-TPB-SPF

DEVON FLOYD,

      Defendant.
_____/

**ORDER DENYING DEFENDANT'S "MOTION TO**
**SUPPRESS 'TOWER DUMP' AND 'PING' EVIDENCE"**

      This matter is before the Court on Defendant Devon Floyd's "Motion to

Suppress 'Tower Dump' and 'Ping' Evidence," filed by counsel on August 29, 2025.

(Doc. 176).  On September 12, 2025, the United States of America filed a response in

opposition to the motion.  (Doc. 180).  On September 25, 2025, Defendant filed a reply.

(Doc. 183).  After reviewing the motion, response, reply, court file, and the record, the

Court finds as follows:

**Background**

      On August 10, 2023, at around 1:58 pm, a man robbed a Family Dollar store in

Tampa, Florida.  Security cameras captured the car in which the robber arrived and

escaped – a dark-colored Mazda 6.  In addition, during the robbery, the robber touched

a box of pens.  Police recovered a fingerprint from the box of pens and entered it into

the automated IAFIS fingerprint identification system, which returned a "lead" to

Defendant.  A fingerprint examiner concluded that the fingerprint was Defendant's

fingerprint.  Police also queried an automatic license plate reader ("ALPR") database

for nearby hits for the Mazda, and they discovered one or more such hits showing the vehicle. The ALPR recorded the Mazda's license plate and provided the police with a new piece of information – the Mazda had a Florida license plate, with tag number BW78SR. Law enforcement officers sent an "exigent data request" to the owner of nearby cellular towers for information. With a "tower dump," as it is known, the cellular tower owner provides police with a list of all cell phones that connected to their tower during a particular timeframe.

On August 11, 2023, at around 9:45 pm, a man attempted to rob a Dollar General store in Lakeland, Florida. The robber passed a written note to the cashier demanding money and containing a threat. The cashier was unable to provide any money, and the robber fled without taking anything. Police queried the Vigilant ALPR database and discovered a scan of the Mazda with the BW78SR license plate approximately 3.1 miles from the robbery location at 8:13 pm., around 32 minutes before the robbery.

On August 12, 2023, at around 3:00 am, someone robbed a Thorton's store in Riverview, Florida. Police queried a database maintained by the Hillsborough County Sheriff's "Eye on Crime Cameras" ("EOC"), an ALPR system. Around an hour before the robbery, the Mazda 6 with license plate BW78SR was around 1.17 miles from the Thorton's. A different ALPR camera, Vigilant, scanned the Mazda around 9 miles from the Thorton's approximately 17 minutes after the robbery.

On August 12, 2023, someone robbed a 7-Eleven in Temple Terrace, Florida. Police queried the EOC database – at 7:21 am, around 19 minutes before the robbery, the EOC camera scanned the plate of the Mazda around 2.5 miles from the 7-Eleven.

On August 12, 2023, at approximately 2:58 pm, someone robbed an Amoco gas station in Orlando, Florida. ALPR cameras in the area scanned the Mazda with license plate BW78SR approximately 4.1 miles from the robbery at around 12:21 pm, which was around 2 hours and 37 minutes before the robbery. During the robbery, the robber wore a blue and white medical-style mask and black Nike slide shoes – both the mask and Nike shoes were recovered near the scene of the robbery. DNA swabs of the mask supported inclusion of Defendant as a single male contributor of the DNA, and swabs of the Nike shoes supported inclusion of Defendant as a contributor of DNA.

On August 13, 2023, at around 11:02 am, a man robbed a Dollar General store in North Port, Florida. Law enforcement queried the Vigilant ALPR cameras and discovered that cameras captured the Mazda at approximately 10:17 am, around 45 minutes before the robbery, approximately 2 miles from the robbery. North Port police issued a "be on the lookout" ("BOLO") alert for the Mazda. An off-duty officer at a Publix saw and reported the Mazda, and law enforcement obtained surveillance footage from the Publix showing Defendant there.

On August 13, 2023, at around 2:10 pm, someone robbed a 7-Eleven in Gibsonton, Florida. Police queried the EOC cameras and discovered the Mazda was scanned at approximately 2:25 pm, around 15 minutes after the robbery, and approximately 4 miles from the robbery location. During the robbery, the robber touched the counter near the cash register. Police recovered latent prints, including palm prints, from the counter. A print analyst concluded the palm print was a match to Defendant.

Law enforcement officers obtained Defendant's Google account information from his probation officer, and on August 13, 2023, they made an "exigent data request" to Google, which responded and provided three devices registered to Defendant's Google accounts. Law enforcement officers checked the devices against the tower dump data from August 10, 2023, and found that one of those devices was listed in the tower dump data. The device used T-Mobile as its cellular service provider. On the same day, an FBI agent sent an "exigent data request" to T-Mobile for "ping" evidence about Defendant's phone. T-Mobile responded, and the ping data showed Defendant may have been near a Rodeway Inn in Tampa, Florida. Agents arrived at the Rodeway Inn, where they found the Mazda. The agents surveilled the motel and learned that Defendant was living there. An agent then obtained four search warrants, one for each of the three rooms at the Rodeway Inn where Defendant was seen, and one for the Mazda. In each warrant application, the affiant included information obtained from the ALPR's, including the Mazda's license plate number.

With the search warrants, agents searched the Rodeway Inn rooms and Mazda. They found and seized the following evidence from the Rodeway Inn: a Girsan model MC 95, 9-millimeter pistol; a Glock model 27 Gen4, .40 caliber pistol; seven rounds of .40 caliber ammunition; a pair of black Nike shorts; a black and white floral baseball cap. They found and seized the following evidence from the Mazda: two pairs of acid washed jeans; a black and gray shirt with a pattern on the back; a package of white medical-style masks. Agents also took DNA swabs from the pistol grips, pistol frame, and buttons.

On August 14, 2023, Defendant was arrested pursuant to a criminal complaint for one count of Hobbs Act robbery.  On September 6, 2023, a grand jury returned a two-count indictment charging Defendant with one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and one count of brandishing a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).  (Doc. 25).  On June 26, 2024, a grand jury returned a superseding indictment charging Defendant with two additional robbery and firearm violations, adding a Hobbs Act conspiracy count and charging Defendant's co-conspirators.  (Doc. 50).  On February 13, 2025, a grand jury returned a second superseding indictment charging Defendant with two additional robbery and firearm charges.  (Doc. 109).

## Analysis

The facts in this case are undisputed, and neither party has requested a hearing on what appears to involve pure issues of law related to the searches in this case.

Law enforcement officers used two tactics in this case that are at issue in the instant motion.  First, they requested a "tower dump" – a pull of data showing which cell phones connected to a particular cell phone tower during a particular timeframe.  Second, they obtained cell phone "pings" of Defendant's phone – that is, data about the precise location of Defendant's phone at a given time.  Officers did not obtain a warrant before getting any of this information.  In his motion, Defendant argues that because law enforcement officers failed to get a warrant, the searches violated the Fourth Amendment, and the tower dump and ping evidence should be suppressed, along with any evidence derived from these searches as fruit of the poisonous tree, including evidence seized during a search of the Rodeway Inn and the Mazda.

The Fourth Amendment prohibits "unreasonable searches and seizures."  U.S. Const. amend. IV.  "A search occurs for the purposes of the Fourth Amendment 'when the government violates a subjective expectation of privacy that society recognizes as reasonable.'"  *United States v. Trader*, 981 F.3d 961, 967 (11th Cir. 2020) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)).

Defendant relies heavily on *Carpenter v. United States*, 585 U.S. 296 (2018), to argue that the law enforcement officers could receive the tower dump data and ping data only pursuant to a search warrant supported by probable cause.  But in *Carpenter*, although the United States Supreme Court held that a search warrant was required for "historical cell phone records that provide a comprehensive chronicle of the user's past movements," the Supreme Court expressly declined to "express a view" on tower dumps and real-time cell phone location data.  *See id.* at 300, 316; *see also United States v. Adkinson*, 916 F.3d 605, 611 (7th Cir. 2019) (noting that *Carpenter* "did not invalidate warrantless tower dumps (which identified phones near *one location* (the victim stores) at *one time* (during the robberies)) because the Supreme Court declined to rule that these dumps were searches requiring warrants.").

The Court is persuaded that the information revealed by the tower dumps and pings in this case – the identification of a particular phone present near a particular place for a particular period of time – "does not present the Fourth Amendment concerns present in *Carpenter*."  *See United States v. Rhodes*, No. 1:19-cr-0073-AT-LTW, 2020 WL 9461131, at *3 (N.D. Ga. Jun. 18, 2020), *report and recommendation adopted,* 2021 WL 1541050 (N.D. Ga. Apr. 20, 2021).  The information obtained from a tower dump or ping simply does not involve the sort of precise location-tracking data

that the Supreme Court held was subject to an individual's legitimate expectation of privacy. *See id.* In light of these decisions, and considering the particular circumstances of this case, there does not appear to be any legitimate basis upon which to conclude that Defendant had a reasonable expectation of privacy as it relates to the tower dump data or ping data.[1]

Moreover, even if the acquisition of real-time cell-site location information ("CSLI") in this case could constitute a search or seizure, it also appears that the tower dump and ping requests were reasonable under the exigent circumstances exception to the warrant requirement. As the Supreme Court explained, "even though the Government will generally need a warrant to access CSLI, case-specific exceptions may support a warrantless search of an individual's cell-site records under certain circumstances . . . includ[ing] the need to pursue a fleeing suspect, protect individuals who are threatened with imminent harm or prevent the imminent destruction of evidence." *Carpenter*, 585 U.S. at 319-20.

In this case, the tower dump data was requested on August 10, 2023, in response to the first in what would become a series of armed robberies. On August 13, 2023, following additional armed robberies, and after Defendant was specifically

---

[1] In many ways, tower dump and ping data is similar to fingerprints. When people go about their daily lives, they knowingly leave fingerprint information behind with no reasonable expectation of privacy in those fingerprints. The same can be said for tower dump and ping data. When people go about their daily lives using mobile phones and other electronic devices, they knowingly leave information behind with no reasonable expectation of privacy. The Fourth Amendment simply does not protect what a person knowingly exposes to the public. *See Katz v. United States*, 351 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *United States v. Goddard*, 312 F.3d 1360, 1363 (11th Cir. 2002) (same).

identified as a suspect through fingerprint and DNA evidence, officers sent another data request related to Defendant's devices.  After Google responded with three devices registered to Defendant, officers compared those devices to the August 10, 2023, tower dump and confirmed that one of the phones associated with Defendant was also included in the August 10, 2023, tower dump information.  It was at that time that officers requested ping data as to Defendant's current location.  Each of these requests was fairly limited and demonstrates that the exigent requests were strictly confined by the nature of the exigency that authorized them.  The fact that officers did not immediately arrest Defendant upon locating him and instead applied for multiple warrants does not change the exigency of locating Defendant.

## Conclusion

The Court concludes that the procurement of tower dump data and ping data did not violate Defendant's Fourth Amendment rights.[2]  There is no reasonable expectation of privacy in such information, and the Supreme Court in *Carpenter* specifically excluded real-time CSLI from its holding.  But even if the law enforcement requests for the tower dump data and ping could constitute Fourth Amendment searches, the failure to obtain a warrant was justified by exigent circumstances.

---

[2] The Court specifically notes that even it was proper or appropriate to extend *Carpenter's* holding to the tower dump data and ping data at issue in this case, the good faith exception would also be applicable.  No reasonably well-trained police officer would be expected to make that leap, particularly given *Carpenter's* own limiting language.  So even if there was a Fourth Amendment violation, the good faith exception to the exclusionary rule would apply, and suppression would not be warranted.  *See United States v. Leon*, 468 U.S. 897, 914-26 (1984).

Consequently, Defendant's "Motion to Suppress 'Tower Dump' and 'Ping' Evidence"

(Doc. 176) is hereby **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>5th</u> day of

December, 2025.

TOM BARBER
UNITED STATES DISTRICT JUDGE